IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KEVIN FAUNTLEROY,**

    Plaintiff,

v.                                                                   Civil Action No. **3:11CV858**

**DEPARTMENT OF CORRECTIONS,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Kevin Fauntleroy, a Virginia prisoner proceeding *pro se*, filed this 42 U.S.C. § 1983[1] action in which he alleges Defendants[2] violated his rights under the Eighth Amendment.[3] Fauntleroy alleges that during his incarceration in the Northern Neck Regional Jail ("NNRJ") Defendants failed to ensure that he received adequate medical care for a hand injury. The matter is before the Court on Defendants' Motion for Summary Judgment. Defendants argue that the

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are: Ted Hull, Superintendent of the Northern Neck Regional Jail ("NNRJ"), Lynn Sudduth, the former chief of inmate services at the NNRJ, and Carolyn Neale, the head nurse at NNRJ. (*See* Compl. 2–3 (as paginated by the Court's CM/ECF docketing system); Mem. Supp. Mot. Summ. J. 2.) The Court notes that Lynn Sudduth's name is now Lynn Resler. (Mem. Supp. Mot. Summ. J. 2.) For the sake of consistency with Fauntleroy's submissions, the Court refers to her as Lynn Sudduth.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Court should dismiss the action because Fauntleroy failed to exhaust his administrative remedies and in the alternative, failed to demonstrate an Eighth Amendment violation. Fauntleroy has responded. For the reasons that follow, the Motion for Summary Judgment will be GRANTED.

### I. SUMMARY OF RELEVANT ALLEGATIONS

On August 23, 2010, Fauntleroy began his incarceration at the NNRJ with a hand injury and a scheduled appointment with an outside doctor for August 26, 2010. (Compl. 5.)[4] Fauntleroy "informed medical about [his] hand and showed them the paperwork" and "was told by Head Nurse [Neale] that they would set up appointment with Doctor." (*Id.*) Fauntleroy continued to submit request forms and "reminded [Captain Sudduth] personally" and Fauntleroy "ran across Super Intendent [sic] Hull in the hallway and he said he would get medical on it." (*Id.*) On October 7, 2010, Fauntleroy filed a grievance, and Captain Sudduth responded that she instructed medical to schedule an appointment with an orthopedist to evaluate Fauntleroy's hand. (*Id.*) Nevertheless, Fauntleroy never had an appointment with the orthopedist. (*Id.* at 6.) Defendant Neale also "stop[ped] giving me the prescription for pain." (*Id.*)

Fauntleroy filed his Complaint on December 18, 2011. (*Id.* at 7.) Fauntleroy seeks monetary damages. (*Id.*) The Court construes Fauntleroy to raise the following claims for relief:

Claim One    Defendants acted with deliberate indifference to Fauntleroy's serious medical needs by denying Fauntleroy access to a specialist.

Claim Two    Defendant Neale acted with deliberate indifference to Fauntleroy's serious medical needs when she discontinued a pain prescription.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system for citations to and quotations from Fauntleroy's submissions.

R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants first ask the Court to dismiss Fauntleroy's action because Fauntleroy failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). In the alternative, Defendants seek dismissal because Fauntleroy fails to demonstrate a violation of his Eighth Amendment rights. Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: (1) their own affidavits (Mem. Supp. Mot. Summ. J. Ex. A, ECF No. 30-1 ("Hull Aff."), Ex. B, ECF No. 30-2 ("Neale Aff."), Ex. C, ECF No. 30-3 ("Sudduth Aff.")); (2) the NNRJ Inmate Rules and Regulations (Hull Aff. Ex. 1); (3) various inmate request forms (*id.* Ex. 2); (4) one Inmate Grievance submitted by Fauntleroy (*id.* Ex. 3); and, (5) Fauntleroy's medical records (Neale Aff. Exs. 1–12 ("Medical Records")).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Fauntleroy submitted an Affidavit ("Fauntleroy Aff.," ECF No. 32) and a sworn and notarized Statement of Disputed Factual Issues ("Disputed Facts," ECF No. 31). In light of the foregoing submissions and principles, the following facts are established for the purposes of the motion for summary judgment.

### III. SUMMARY OF UNDISPUTED FACTS

#### A. NNRJ's Grievance Procedure

Section 15: Grievance Procedure, of the Inmate Handbook Rules and Regulations ("Section 15"), is the mechanism used to resolve inmate complaints at the NNRJ. (Hull Aff. ¶ 7; *see id.* Ex. 1, § 15.) Section 15 requires that, before submitting a formal grievance, the inmate

should attempt to resolve the problem with an informal Request Form that "must be filed within 7 calendar days after the initial event giving rise to the complaint." (*Id.* § 15.A.)

### 1. Grievance Processing

If "an inmate feels he/she cannot resolve the complaint informally, he/she may proceed with the formal grievance procedure." (*Id.*) In the grievance, an inmate "must show proof of your allegations or charges. Included in this proof will be the Inmate Request Form(s) that [the inmate] received back that did not answer/resolve the complaint." (*Id.* § 15.B.1.) The grievance must be filed "no later than 7 calendar days after receiving a response to the Inmate Request Form filed regarding this matter." (*Id.*) "When preparing a grievance, inmates must state the specific nature of their complaint. Inmates must also explain what efforts (if any) they have taken to resolve their problems by other means. Complaints which are vague will be returned for clarification." (*Id.* § 15.B.4.) After logging the grievance, the concerned Department Head will:

> Cause an investigation to be conducted into the complaint.
> Respond in writing to the inmate concerned within (9) working days after receipt[.]
> If this time is not sufficient in which to respond, the inmate concerned will be so informed.

(*Id.* § 15.B.5 & 15.B.6.)

### 2. Appeal Procedures

If an inmate feels that the grievance response fails to "answer his/her complaint, he or she may then appeal to the Assistant Superintendent." (*Id.* § 15.C.1.) "Appeals to the Assistant Superintendent must be forwarded within seven (7) calendar days of the date on the original response." (*Id.* § 15.C.2.) The inmate "must send his or her original grievance, together with a copy of the response, and the appeal form" and the "appeal must indicate reasons why the inmate believes the original response does not answer his or her complaint." (*Id.*) "If not satisfied by

5

the response of the Assistant Superintendent," the inmate "may appeal to the Superintendent for reconsideration and review of the grievance. Appeals must be forwarded within seven (7) calendar days of the date appearing on the Assistant Superintendent's response." (*Id.* § 15.C.3.) "The decision of the Superintendent is FINAL!" (*Id.*)

### B. Facts Pertinent to Fauntleroy's Hand Injury

On August 23, 2010, Fauntleroy began his incarceration in the NNRJ. (Hull Aff. ¶ 3.) Fauntleroy brought hospital discharge papers with him to NNRJ. (Compl. 5.) Fauntleroy's medical records "do not indicate that Fauntleroy reported to NNRJ staff that he had an existing medical appointment." (Neale Aff. ¶ 3.) The following day, the jail physician prescribed Fauntleroy thirty tablets of ibuprofen, with instructions to take one tablet every eight hours as needed for pain. (*Id.* ¶ 4.) On August 24, 2010, Fauntleroy submitted an Inmate Request Form unrelated to his hand injury, made no mention of his hand, and on September 1, 2010, medical responded and placed Fauntleroy on the next available doctor's call. (*Id.* ¶ 5.)

On September 2, 2010, NNRJ received Fauntleroy's medical records from Riverside Tappahannock Hospital. (*Id.* ¶ 6.) The records reflect that hospital staff saw Fauntleroy on August 19, 2010 for evaluation of his hand. (*Id.*) Fauntleroy reported to hospital staff that he injured his hand a month earlier when "a hammer hit his hand." (*Id.* Ex. 3, at 16, ECF No. 30-2 (as paginated by the Court's CM/ECF docketing system).) Fauntleroy had been diagnosed with a closed metatarsal fracture, and the x-ray of his hand at the hospital showed a healing fracture. (Neale Aff. ¶ 6; *id.* Ex. 3, at 13, 16.)

On September 7, 2010, the NNRJ physician saw Fauntleroy for an unrelated injury. (Neale Aff. ¶ 7.) During the appointment, Fauntleroy noted that he injured his hand on July 3, 2010, but only went to the emergency room on August 19, 2010. (*Id.* Ex. 4, at 1.) The physician

examined Fauntleroy's hand, noted it had a full range of motion, was non-tender, and that there was no deformity. (Neale Aff. ¶ 7.)

On October 8, 2010, Fauntleroy submitted an Inmate Grievance complaining "about my hand that is broken and have [sic] not been treated." (Hull Aff. Ex. 3, at 1; *see* Hull Aff. ¶ 10.) Fauntleroy requested an appointment with an orthopedist. (*Id.* Ex. 3, at 1.) On October 13, 2010, Defendant Sudduth responded: "I have instructed medical to schedule an appointment with the ortho doctor ASAP to evaluate your hand." (*Id.*) Fauntleroy marked on the form that he was satisfied with the above response and did not wish to appeal the decision. (*Id.*) Fauntleroy filed neither an appeal, nor any other grievance with respect to pain in his hand or his desire to see a specialist. (*Id.* ¶ 10; Fauntleroy Aff. 2.)

Defendant Neale avers that on October 13, 2010 "Superintendent Hull instructed me to schedule an appointment for Fauntleroy to be seen at MCV Hospital for his hand. I faxed a request for an appointment to Karen Morrison with MCV Hospital." (Neale Aff. ¶ 9.) On October 25, 2010, MCV Hospital forwarded and Defendant Neale received a financial screening application for indigent care. (*Id.* ¶ 11.) On the same day as she received the application, Defendant Neale had Fauntleroy complete the application and she faxed it back to MCV Hospital. (*Id.* ¶ 11; Neale Aff. Ex. 6, at 1.) On November 1, 2010, Defendant Neale, "on [her] own initiative . . . called MCV to ask about the status of the application. [She] was told that the application had been received and that any further communication would be sent by MCV directly to Fauntleroy by mail." (*Id.* ¶ 12.) Fauntleroy provided no "notification that he had been contacted by MCV or that any appointment had been scheduled for him to be seen." (*Id.* ¶ 13.) Fauntleroy avers that "MCV never contacted him." (Disputed Facts ¶ 4.)

7

Fauntleroy filed no new Inmate Request Forms until February 9, 2011. (Neale Aff. ¶ 14.) On that date, Fauntleroy filed an Inmate Request Form asking why he no longer received ibuprofen. (*Id.*) Fauntleroy filed informal complaints reporting hand pain on February 9, 2011, September 7, 2011, September 19, 2011, and November 26, 2011. However, he at no time stated that he had not yet been seen by a specialist or had a continued desire for such an appointment. (Neale Aff. ¶ 14–17.)

## IV. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that Section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency"s deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

### A.     Claim One

Claim One involves Fauntleroy's request to see an orthopedic specialist. While Fauntleroy filed an Inmate Grievance to this effect, he failed to pursue it through all available levels of appeal prior to bringing his action to court. *See Woodford*, 548 U.S. at 90. Fauntleroy admits he filed no appeal of the Inmate Grievance, stating his failure to appeal was "because being treated by Orthopaedic was exactly what I wanted from start." (Fauntleroy Aff. 2.)

In some circumstances, an inmate may satisfy the exhaustion requirement if he receives a favorable outcome on a grievance and the prison rules relieve the inmate of the obligation to pursue further appeals. *See Toomer v. BCDC*, 537 F. App'x 204, 206 (4th Cir. 2013) (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004); *Dixon v. Goord*, 224 F. Supp. 2d 739, 749 (S.D.N.Y. 2002)). While the Court expresses doubt that those circumstances are present here,[5] in light of existing precedent and the evident lack of merit of the underlying claim, the Court declines to dismiss Claim One for lack of exhaustion.

### B.     Claim Two

In Claim Two, Fauntleroy alleges that Defendant Neale stopped his prescription for pain. No evidence exists that Fauntleroy filed an Inmate Grievance or appeal with regard to Claim

---

[5] Fauntleroy filed only one Inmate Grievance about his desire to see a specialist. Fauntleroy received a favorable ruling and Defendants took the necessary steps to secure Fauntleroy an appointment with the orthopedist. Defendant Neale contacted MCV Hospital, received an indigent care application that she had Fauntleroy complete, and forwarded the application to MCV Hospital. When Defendant Neale called to follow-up on the application, hospital staff informed Defendant Neale that "the application had been received and that any further communication would be sent by MCV directly to Fauntleroy by mail." (Neale Aff. ¶ 12.) While Fauntleroy avers that he never received correspondence from MCV Hospital, it is undisputed that Fauntleroy filed no further grievances, complaints, or informally notified Defendants that no appointment had been scheduled. *Cf. Abney*, 380 F.3d at 669 (concluding that inmate who continuously filed grievances about inadequate medical care and "repeatedly obtained favorable rulings on his grievances" had exhausted administrative remedies).

9

Two before bringing the instant complaint. *See Woodford*, 548 U.S. at 90. Thus, Fauntleroy fails to satisfy 42 U.S.C. § 1997e(a). Claim Two will be DISMISSED WITHOUT PREJUDICE.

## V. EIGHTH AMENDMENT

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). Fauntleroy must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.*

To survive a motion for summary judgment on an Eighth Amendment claim, Fauntleroy must demonstrate that the Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A.  Defendant Superintendent Hull

In Claim One, Fauntleroy argues that Defendants were deliberately indifferent to his serious medical needs when they denied him access to a specialist for hand pain. Specifically, Fauntleroy claims Defendant Hull violated his Eighth Amendment rights because "he oversees

all actions and was suppose[d] to guarantee that I am not harmed and kept in good health." (Compl. 6.) Fauntleroy states no claim against Defendant Hull based on his supervisory role alone. *Vinnedge*, 550 F.2d at 928.

Assuming, without deciding, that Fauntleroy's pain from his hand injury was "objectively, sufficiently serious," *Farmer*, 511 U.S. at 834,[6] Fauntleroy demonstrates no deliberate indifference to his medical needs by Defendant Hull. On an unspecified date, Fauntleroy alleges that he saw Defendant Hull in the hall and Fauntleroy expressed some concern about his hand to Defendant Hull. (Compl. 5.) Defendant Hull told Fauntleroy "he would get medical on it." (*Id.*) The record shows that on October 13, 2010, Defendant Hull instructed Defendant Neale to schedule an appointment for Fauntleroy with MCV Hospital for his hand. (Hull Aff. ¶ 11; Neale Aff. ¶ 9.) Defendant Hull reasonably responded to Fauntleroy's request for medical care by instructing the medical department to address Fauntleroy's concerns, and then could rely on those individuals charged with Fauntleroy's medical care to appropriately treat Fauntleroy. *Iko*, 535 F.3d at 242 (omission in original) ("'If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))).

---

[6] Respondents argue that Fauntleroy's pain due to a healing hand fracture was not a sufficiently serious medical need. (Mem. Supp. Mot. Summ. J. 11–12.) To support their argument they offer the following uncontroverted facts: (1) Fauntleroy waited over a month to go to hospital after he sustained the injury; (2) the hospital noted he had a healing broken bone and released him with a prescription for ibuprofen; (3) Fauntleroy waited over a month after arriving at NNRJ to request medical care for his hand pain; (4) the prison physician examined Fauntleroy's hand and noted Fauntleroy had a full range of motion and the hand was non-tender; (5) Fauntleroy continually applied for prison jobs that required frequent use of his hand; and, (6) Fauntleroy himself admits that he has been trying "to work out" and "play ball" but he "do[es] it through the pain." (*Id.*; Compl. 4.) While Fauntleroy's actions run counter to those actions taken by a person experiencing serious pain and permit an inference that Fauntleroy's pain lacked sufficient severity to require referral to a specialist, the Court need not determine whether Fauntleroy's hand pain was sufficiently serious because he fails to demonstrate any deliberate indifference to his medical needs by the three Defendants.

Moreover, because Defendant Hull responded reasonably to Fauntleroy's medical concern, he cannot be found to have acted with a sufficiently culpable state of mind to establish deliberate indifference. *See Brown*, 240 F.3d at 389 (alteration in original) (citations omitted) (internal quotation marks omitted) (holding that "an official who responds reasonably to a known risk has not disregard[ed] an excessive risk to inmate health or safety . . . and therefore has not acted with deliberate indifference.") Accordingly, Fauntleroy fails to demonstrate Defendant Hull acted with deliberate indifference to Fauntleroy's medical needs and Claim One against Defendant Hull will be DISMISSED.

### B. Defendant Sudduth

Fauntleroy claims that as "Head of Medical at this facility" Defendant Sudduth "supposedly instructed medical to have me sent to the ortho doctor which never happened." (Compl. 6.) The record demonstrates that on October 12, 2010, Defendant Sudduth responded to Fauntleroy's only grievance, stating: "I have instructed medical to schedule an appointment with the ortho doctor ASAP to evaluate your hand." (Hull Aff. Ex. 3, at 1.) Defendant Sudduth avers that as chief of inmate services, she oversees the medical department and supervises the department from an administrative standpoint. (Sudduth Aff. ¶ 3.) Defendant Sudduth avers that she is not a physician, nurse or medical provider and she provides no medical treatment. (*Id.*)

Fauntleroy puts forth no evidence to refute Defendant Sudduth's statement that she had no involvement in Fauntleroy's medical care. As non-medical personnel, Defendant Sudduth reasonably responded to Fauntleroy's only grievance complaining of a broken bone and his desire to see a "bone doctor," and then instructed those individuals charged with Fauntleroy's medical care to make an appointment for Fauntleroy based on his representations. *See Iko*, 535 F.3d at 242; *see Brown*, 240 F.3d at 389. Fauntleroy fails to demonstrate Defendant Sudduth

acted with deliberate indifference to Fauntleroy's serious medical needs. Claim One against Defendant Sudduth will be DISMISSED.

C.  **Defendant Neale**

Fauntleroy alleges that he "was told by Head Nurse Neal[e] that they would set up appointment with Doctor." (Compl. 5.) Fauntleroy faults Neale because after that, she "basically [did] nothing." (*Id.* at 6.) Fauntleroy avers that "[a]fter this day of grievance being returned all I got was the run around. . . . At this point I was fed up so I started my civil suit through [42] U.S.C. [§] 1983 form." (Fauntleroy Aff. 2.) The record fails to support Fauntleroy's conclusory assertion that Defendant Neale acted with deliberate indifference to Fauntleroy's serious medical needs.

Instead, the record establishes that Defendant Neale responded reasonably to Fauntleroy's desire to see a specialist for his hand pain. After Fauntleroy filed his only Inmate Grievance about his desire to see a specialist, Defendants Neale took the appropriate steps to secure Fauntleroy an appointment with the orthopedist. Defendant Neale contacted MCV Hospital about scheduling Fauntleroy an appointment, received an indigent care application that she had Fauntleroy complete as the hospital instructed Fauntleroy must do, and forwarded the application to the hospital. (Neale Aff. ¶ 9–11.) When Defendant Neale called to follow-up on the application without any prompting from Fauntleroy, hospital staff informed Defendant Neale that "the application had been received and that any further communication would be sent by MCV directly to Fauntleroy by mail." (*Id.* ¶ 12.)

While Fauntleroy avers that he never received correspondence from MCV Hospital, no evidence exists that Fauntleroy filed further grievances, complaints, or informally notified Defendant Neale that no appointment had been scheduled. Additionally, the record fails to

14

establish that Fauntleroy expressed his continued desire to see a specialist to Defendant Neale before filing this action. In light of Defendant Neale's appropriate actions, and Fauntleroy's discontinued complaints, Fauntleroy fails to demonstrate that Defendant Neale acted with deliberate indifference to his medical needs. Claim One against Defendant Neale will be DISMISSED.

## VI. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 29) will be GRANTED. The action will be DISMISSED WITH PREJUDICE.

An appropriate Final Order shall issue.

Date: 6/7/14
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

15